UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CASE NO. 2020-CV-_____

**ESTATE OF BRADLEY GROTE**

**PLAINTIFF**                                        **JUDGE** _____

-vs-

**KENTON COUNTY, KENTUCKY and the**
**KENTON COUNTY FISCAL COURT**
**as the operators of the**
**KENTON COUNTY DETENTION CENTER**
**3000 Decker Crane Lane**
**Covington, KY 41017**

**KENTON COUNTY DETENTION CENTER**
**3000 Decker Crane Lane**
**Covington, KY 41017**

**JAILER TERRY CARL**
**In his individual capacity and**
**his official capacity as elected**
**jailer in Kenton County**
**3000 Decker Crane Lane**
**Covington, KY 41017**

**DEPUTY SARAH BELL**
**DEPUTY BRIAN JENNINGS**
**DEPUTY ALEXANDER BROWN**
**DEPUTY AARON BRANSTUTTER**
**SGT. JASON RUSSELL**
**AND UNKNOWN ADDITIONAL**
**DEPUTIES A/K/A/ JOHN DOES**
**in their individual capacities and their official**
**capacities as employees of the**
**Kenton County Detention Center**
**3000 Decker Crane Lane**
**Covington, KY 41017**

**And**

**CAITLIN BRAND**
**in her individual capacity and her official**
**capacity as an employee of the**
**SOUTHERN HEALTH PARTNERS, INC.**

**AND**

**SOUTHERN HEALTH PARTNERS, INC.**
**SERVE: C.T. Corporation System**
**306 West Main Street**
**Suite 512**
**Frankfort, Ky. 40601**

**AND**

**AN UNKNOWN EMPLOYEE KNOWN AS JANE DOE**
**in her individual capacity and her official**
**capacity as an employee of the**
**SOUTHERN HEALTH PARTNERS, INC.**

**SERVE: C.T. Corporation System**
**306 West Main Street**
**Suite 512**
**Frankfort, Ky. 40601**

        **DEFENDANTS**

---

## WRONGFUL DEATH COMPLAINT WITH JURY DEMAND

---

    **NOW APPEARS**, The Estate of Bradley Grote, hereinafter known as the Plaintiff in the

above-captioned action, and for his Complaint against the Defendants states as follows:

### JURISDICTION

1.    Jurisdiction in this Court is proper pursuant to 28 USC §1343(a)(3) and 28 USC §1331

because Plaintiff alleges constitutional violations and asserts his federal constitutional and

statutory rights pursuant to 42 USC §1983 against persons acting under color of state law and for

2

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

causes of action under the laws and Constitution of Kentucky. This Court has mandatory jurisdiction over Plaintiff's state law causes of action pursuant to 28 USC §1367.

## THE PARTIES

2.      Plaintiff, Bradley Grote, now deceased, is and was, for all times relevant hereto, a resident and domiciliary of the Commonwealth of Kentucky on July 19, 2019 when he was incarcerated in the Kenton County Detention Center. Plaintiff demands trial by jury on all issues before this Court. Administrator of the Estate of Bradley Grote is Luanna Grote, the decedent's mother.

3.      Defendant Kenton County, Kentucky, has a four-member fiscal court comprised of a judge executive and three county commissioners each of whom is an elected official.

4.      The Defendant Terry Carl is the elected jailer for Kenton County, Kentucky and together with the Fiscal Court is responsible for the care, custody, and medical treatment of inmates at the Defendant Kenton County Detention Center.

5.      Defendants, Sarah Bell, Brian Jennings, Alexander Brown, Aaron Branstutter, Jason Russell, along with various other unknown individuals known as "John Doe" employees of the Kenton County Detention Center, were believed to be employed and on official duty on July 19, 2019 at approximately 4 pm. when the Plaintiff was brought into the detention facility by the Covington Police Department.

6.      Defendant, Caitlyn Brand, along with another unknown employee at this name known as "Jane Doe", were also employed by Southern Health Partners, Inc. via a written contract to provide necessary medical care to inmates such as the Plaintiff and were on official duty on July 19, 2019 at 4 pm. when the Plaintiff was brought into the detention facility by the Covington Police Department.

3

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

7.     That at all times herein Defendant Southern Health Partners, Inc., was a corporation for profit in the Commonwealth of Kentucky and under written contract to provide competent private medical care for the inmates of the Kenton County Detention Center and its employees were in direct contact with the Plaintiff on July 19, 2019.


## FACTS

Plaintiff repeats, realleges and incorporates by reference each allegation contained within paragraphs 1 through 7 as if fully recited herein and further states as follows:

8.     The Fiscal Court pursuant to KRS 441.025 is required to provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county.

9.     The Fiscal Court, pursuant to KRS 441.045 must "prescribe rules for the government, security, safety, and cleanliness of the county jails and the comfort and treatment of prisoners."

10.     The Fiscal Court must establish education and training requirements for deputies and its medical staff including the staff provided by Southern Health Partners, Inc. (KRS 441.055)

11.     The Commonwealth of Kentucky endorses private prisons.  Operating a jail in Kentucky is not solely a governmental function.

12.     Defendant Kenton County Fiscal Court for all times relevant hereto, approves the Kenton County Detention Center written policies and procedures and controls funding of the jail operations.

13.     The denial of medical care and lack of appropriate training, management, supervision, staffing and/or funding to appropriately take care of inmates with known and obvious medical issues occurs with such frequency at the Kenton County Detention Center that it has become the custom and policy of Defendant the Fiscal Court of Kenton County.

4

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

14.     By controlling the funding of the Kenton County Detention Center and controlling and approving the written policies and procedures of the Detention Center which encompasses medical treatment provided to inmates, the Kenton County Fiscal Court is responsible for the care and protection of the prisoners in the Kenton County Detention Center at Covington, Kentucky.

15.     The Defendant Terry Carl is the elected jailer for Kenton County, Kentucky and through the responsibility, authority and power granted to him by the Kentucky Constitution and Kentucky Statutes is empowered to and is required to enforce the policies and procedures of the Detention Center, including but not limited to policies and procedures governing the use of force, the safety and wellbeing of prisoners and the provision to guarantee and provide competent medical treatment to the inmates from the moment they arrive at said facility until they are ultimately released.

16.     Jailer Terry Carl and his staff are required to treat inmates and prisoners humanely and furnish them with proper food and lodging and medical care during their confinement pursuant to KRS 70.040 et al.

17.     Jailer Terry Carl pursuant to KRS 441.045 is responsible for a curriculum of basic and continuing annual training for jailers and jail personnel, as well as responsibility for the custody, care and treatment of prisoners and their medical care.

18.     Deputies at the jail have the same powers and are subject to the same penalties as the jailer as previously referenced herein. (KRS 71.060)

19.     The Kentucky Constitution at § 17 prohibits cruel and unusual punishment.

20.     The United States Constitution protects the rights of pretrial detainees, inmates, and prisoners under the Fourth, Eighth and Fourteenth Amendments

5

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

21.     The Defendant, Jason Russell, was classified as a Sargent and/or shift supervisor on July 19, 2019 while employed by the Kenton County Detention Center through the Kenton County Fiscal Court on behalf of Kenton County, Kentucky.

22.     Deputies, Bell, Jennings, Brown, Branstutter, Russell, along with other John Doe employees of the Kenton County Detention Center who are unknown at this time, were employed on July 19, 2019 and in charge of overseeing the medical care of the Plaintiff among other important tasks to protect the inmates.

23.     That Defendant, Jailer Terry Carl along with his staff, and the staff of Defendant Southern Health Partners, have a well-known and documented propensity for not appropriately and properly taking care of its pretrial detainees and/or inmates while at the Kenton County Detention Center.

24.     The website for the Kenton County Jail states as follows:

> The Kenton County Jailer and Deputies strive to make the Jail a Community Institution, in which we exercise fiscal responsibility, reasonable conditions of confinement, service to the People, and an unwavering commitment to Public Safety." (emphasis supplied)

http://www.kentoncountyjail.org/index.php (September 25, 2017)

25.     On the date of July 19, 2019 at 4:00 pm. the Plaintiff was being booked into the Kenton County Detention Center by Deputy Brown, Brown noticed the Plaintiff was acting agitated, restless, twitching his muscles uncontrollably, suffering from intense pain, rapid breathing, having trouble swallowing, not to mention being absolutely soaked in water from his own sweat.

26.     That the signs and symptoms exhibited by this Plaintiff were classic signs of a methamphetamine overdose.

27.     That the Plaintiff's prior history and addiction to methamphetamine was very well known to the jail staff well before July 19, 2019.

6

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

28.     That the jail staff was able to and did access all the computer records on the Plaintiff previous to his arrest on July 19, 2019 in an effort to make themselves fully aware of the prior criminal history of this Plaintiff at the Kenton County Detention Facility.

29.     That it was abundantly clear and obvious to any lay person that the Plaintiff had an underlying medical condition as he entered the jail on July 19, 2019.

30.     That the Plaintiff exhibited manifestations of pain and injury as well as other symptoms of a possible overdose during his detention so obvious that even a lay person could easily have recognized the necessity for immediate 911, doctor, or emergency room treatment.

31.     That everyone who came into contact with the Plaintiff on July 19, 2019 knew or should have known of the necessity for immediate and critical emergency medical relief for the Plaintiff.

32.     That there was verifying medical evidence plainly observable by the human eye which would have told anyone this was an immediate medical emergency situation.

33.     That the employees of Southern Health Partners, Inc., and the jail staff that came into contact with the Plaintiff were all aware of and knew or should have known of the serious medical needs immediately required for this Plaintiff.

34.     That the longer the Plaintiff remained in the Kenton County Detention Center the more obvious it became that this Plaintiff needed emergency medical relief by doctors in an emergency room setting rather than simply be placed in cell to die.

35.     That the delays in providing medical care by the employees of the Kenton County Detention Center and the employees of Southern Health Partners, Inc., created a substantial risk of serious harm and eventually caused the death of this Plaintiff.

7

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

36.    That the Kenton County Detention Center and Terry Carl, jailer, fail to train their employees and because of that failure to train their employees they routinely violate and do not follow their Policy and Procedure Manual adopted by the Kenton County Fiscal Court which is blatantly obvious to any lay person that watches the video in this matter.

37.    That Southern Health Partners fail to train their employees on the proper methods to detect, treat and manage individuals suspected of Methamphetamine overdoses which is blatantly obvious to any lay person who watches the video in this matter.

38.    That the lack of staffing by the Kenton County Detention Center is and has been a major problem for many years.

39.    That Terry Carl, the jailer, and the Kenton County Fiscal Court, rather than address the lack of staffing issues choose instead to simply have their employees work double and triple shifts.

40.    That it is obvious and well known even to a lay person that when an employee is forced to work a double or triple shift they cannot provide the same standard of care that is required to properly take care of inmates.

41.    That the training for the Kenton County Detention Center is routinely performed by the same individuals who violate the policies and procedures of the Kenton County Detention Center themselves.

42.    That the Plaintiff was never one to use heroine and the Kenton County Jail Staff was aware of same before the Plaintiff entered the facility on July 19, 2019.

43.    That Deputy Alexander Brown, the booking officer on July 19, 2019, immediately upon observing and talking to the Plaintiff, promptly notified and requested permission from Sgt.

8

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

Jason Russell, the shift commander on duty, to perform a complete search of the Plaintiff due to his concerns upon first coming into contact with the Plaintiff.

44.     That Deputy Brown's demands to conduct a full search of the Plaintiff was based upon the fact the Plaintiff was demonstrating classic signs of drug addiction and/or overdose.

45.     That while conducting the initial search Deputy Brown observed the Plaintiff clinching his buttocks and other muscles which were obvious signs and indicators of narcotics within one's body.

46.     That Deputy Brown immediately recognized the Plaintiff had serious medical needs.

47.     That after conducting the first search of the Plaintiff Deputy Brown immediately notified Sgt. Russell a second time of his suspicions due to the increasingly more erratic behavior and overall physical condition of the Plaintiff which was getting worse by the minute.

48.     Sgt. Russell then gave permission for Deputy Brown to then conduct a full body cavity search.

49.     That during the full body cavity search Deputy Brown became even more concerned with the behavior of the Plaintiff as the twitching, involuntary movements, agitation, restlessness, confusion, intense pain, panic, rapid breathing, and tremors kept getting worse and more frequent by the minute and by now the Plaintiff's clothes were completely soaked in water and/or sweat and clinging to the Plaintiff's body.

50.     That Deputy Brown then learned and confirmed that the Plaintiff had swallowed a large amount of Methamphetamine from the Plaintiff.

51.     That right then and there Deputy Brown should have called 911 to allow for professional and competent doctors to address this emergency situation as he was not trained to handle this matter any further per the Policy and Procedure Manual.

52. That Deputy Brown instead passed on this information to Sgt. Russell who by policy and procedure should have immediately called 911 at that very moment.

53. That at all relevant times herein the nearest hospital was approximately 8 minutes away from the jail driving at regular speeds.

54. That rather than take the Plaintiff to the near hospital Deputy Brown continued with the booking process of the Plaintiff per the orders of Sgt. Russell despite his obvious worsening condition.

55. That booking officer, Sarah Bell, also observed the Plaintiff in close proximity to her (less than 3 to 4 feet) but still persisted on instructing the Plaintiff on various admission forms at the request of Sgt. Russell.

56. That as part of the admission process Deputy Sarah Bell instructed the Plaintiff to sign his name, date of birth, read certain documents and give his social security information.

57. That the Plaintiff was clearly in agonizing pain and discomfort and getting worse by the second as he was before Sarah Bell at the booking desk which is clearly seen on the video provided by the jail.

58. That the Plaintiff was clearly unable to hardly speak not to mention understand and answer all kinds of booking questions at that particular moment which was obvious to anyone including Deputy Bell.

59. That the Plaintiff was clearly unable to sign his name, date of birth or social security number which again would be completely obvious to any reasonable lay person who looked at these documents and/or saw the video of same.

60. That Deputy Sara Bell should have contacted 911 herself at this point per the Policy and Procedure Manual as the Plaintiff was less than four feet away sweating profusely, shaking

10

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

uncontrollably, agitated, confused, and breathing very rapidly and quickly becoming totally incoherent.

61.     That as part of the booking process all individuals brought into the jail are all photographed for many reasons including for purposes involving the jail tracker system.

62.     That the Plaintiff was unable to be photographed due to his severe tremors and being incoherent not to mention his inability to stand still long enough for a picture to be taken.

63.     That any reasonable person of sound mind would have known that after the jail tracker photo attempts that 911 should have been immediately called by each and every employee of the jail that came into contact with this Plaintiff.

64.     That once again rather than call 911 or seek emergency medical treatment Sgt. Russell then advised the Plaintiff to sit down in one of the booking chairs.

65.     Sgt. Russell instructed the Plaintiff to sit down literally before he fell down due to his obvious and clearly observed pain and anguish and uncontrollable twitching, tremors, trouble breathing and talking, and intense stomach pain not to mention the continuation of the profuse sweating.

66.     That the Plaintiff sat down in the black leather chairs as instructed in front of booking desk as is clearly caught on video.

67.     That due to the worsening condition of the Plaintiff a crowd of deputy jailors then circled around the Plaintiff and observed him although they did nothing other than watch him for a considerable amount of time all the while the Plaintiff was moaning and in agony.

68.     That every deputy jailer that stood around the Plaintiff and observed him also had the opportunity to call 911 to get the Plaintiff immediate medical treatment and demonstrated deliberated indifference by not doing do.

69. That any reasonable lay person that observed the Plaintiff while he sat in front of the booking office would have known to immediately call 911 and get this man emergency assistance at a local hospital.

70. That every minute the jail staff waited in addressing the Plaintiff's obvious medical needs could have been used to save the Plaintiff's life.

71. That as indicated the nearest hospital was 8 minutes or less away.

72. That knowing that the meth was taken orally by the Plaintiff and knowing the amount was large in volume the doctors in the Emergency Room were not given enough time to give the Plaintiff the appropriate activated charcoal and/or laxatives or pump the stomach of this Plaintiff.

73. That Sgt. Russell, rather than still calling 911, then decided to finally call in medical assistance through Caitlin Brand of Southern Health Partners who was accompanied by another female staff member.

74. That as indicated eventually Ms. Brand and another female attendant or nurse appeared on the scene to address the Plaintiff.

75. That upon showing up to the scene Ms. Brand should have immediately contacted 911 or had the inmate taken directly to the near emergency room.

75. That it did not take anyone with a medical degree to quickly know that the Plaintiff needed emergency medical help.

76. That Ms. Brand rather than call 911 then appears to retrieve the vitals from the Plaintiff.

77. That in watching the video Ms. Brand has major difficulties in getting the vitals from the Plaintiff due to his uncontrollable tremors, shaking, moaning from pain, and the wet surface of his skin.

12

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

78. That Ms. Brand observed a very high temperature, high blood pressure, lack of oxygen and a man who was absolutely drenched in his own sweat yet she still chose to not call 911.

79. That this jail has in the past has literally driven inmates to the nearest hospital when they believed minutes were precious to saving one's life.

80. That at no time did anyone drive the Plaintiff to the near hospital despite having the vans and vehicles available to do same as Sgt. Russell, the shift supervisor with the power and ability to do same, chose not to.

81. That the crucial moments referenced up to this point were the Plaintiff's ultimate death sentence.

82. That the jail staff and the nursing staff from Southern Health Partners were fully aware that the Plaintiff had ingested Methamphetamine at this point in time and knew it was a large enough amount to immediately call 911 or take the Plaintiff in a personal jail vehicle to get the Plaintiff the required and obvious emergency treatment from educated and practicing emergency room doctors, physicians and other medical experts.

83. That despite all the issues with taking the vitals of this Plaintiff Sgt. Russell and Caitlyn Brand made the decision to place the Plaintiff in a jail cell (104) for further observation rather than take him to the emergency room.

84. That the Plaintiff was escorted by many deputies and nurses on his way to cell 104 due to his instability and obvious pain and suffering.

85. That the Plaintiff, upon entering the jail cell, immediately laid in the corner and curled up in a ball due to the intense and severe pain he was experiencing not to mention trouble breathing and other erratic behavior.

86.     That the Plaintiff eventually went into seizures and was seizing for over 20 minutes before EMS arrived to take him to the hospital as 911 was "eventually called".

87.     That prior to entering the cell known as 104 Nurse Brand decided to take the Plaintiff's vitals again which further demonstrated an incoherent person with extreme hyperthermia, a dramatic spike in his body temperature, very high blood pressure and the puddling of water dripping from the clothes of the Plaintiff onto the jail cell floor.

88.     That Nurse Brand was clearly aware the Plaintiff was having trouble breathing as he laid on the cell floor as his oxygen was extremly low at this point among other reasons to immediately call 911 or move the inmate to the nearest emergency room for professional and competent treatment.

89.     That anyone who watches the video tape in the jail cell would have known to immediately call 911 and seek emergency treatment for the Plaintiff.

90.     That Caitlin Brand is believed to be a trained and educated nurse yet she still chose to not call 911 or seek emergency medical treatment for the Plaintiff.

91.     That any deputy that stood around in cell 104 had the ability to call 911 and deliberately chose not to.

92.     That the deputies within the cell itself are observed smiling and smirking during various parts of the video which depicted the time spent in the detention center on July 19, 2019.

93.     That this jail and this County has a policy of not calling 911 and/or taking individuals to the emergency room until the very last minute due to cost and expense concerns.

94.     That Nurse Brand is heard on video before leaving cell 104 that the Plaintiff should be on a ten minute watch.

95.   That after placing the Plaintiff in cell 104 it is believed he immediately began to have seizures and he quickly became incoherent and lost consciousness therefore making him unable to talk or yell for help.

96.   That at no time did the medical staff ever check in on the condition of the Plaintiff after he was placed in cell 104 and placed on a 10 minute watch or they would have clearly known the Plaintiff was starting to die in front of them.

97.   That despite Nurse Brand indicating to all deputies present that the Plaintiff should be constantly observed and checked on at least every ten minutes Sgt. Russell then placed the Plaintiff on a 30 minute watch due apparently to the lack of staff or because many members of the staff were working an extra shift that particular day.

98.   That no one checked on the Plaintiff after he was placed in cell 104 other than another inmate that happened to be walking by and looked in despite what the logbook may say.

99.   That the 30 minute logbook entries cannot possibly be accurate in this case.

100.   That the Plaintiff never got off the ground and laid curled in a ball foaming out of his mouth until he was ultimately discovered by another inmate known as a trustee.

101.   That the jail staff or medical staff upon being notified by the trustee/inmate then decided to ultimately call 911.

102.   That the Plaintiff had seizures in excess of 20 minutes before anyone arrived by ambulance to address his critical serious medical needs.

103.   That no reasonable person of sound mind would have ever placed this Plaintiff in an observation cell seeing his condition and how it was deteriorating so rapidly by the minute.

15

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

104.    That even after finding the Plaintiff in a comatose unresponsive state foaming and frothing out of the mouth and having obvious seizures in front of their eyes the jail staff did not immediately take the Plaintiff to the hospital rather they waited for an ambulance.

105.    That the ambulance personnel were astounded by the fact the Plaintiff had laid in his current condition seizing for in excess of 20 minutes prior to them being on scene.

106.    That the Plaintiff died in the cell 104 due to the many, many acts of deliberate indifference exhibited by all these Defendants in this matter.

107.    That the emergency personnel were finally able to get a pulse and were able to keep the Plaintiff alive until July 22, 2019 however he never regained consciousness.

108.    That this Plaintiff died at the Kenton County Detention Center due to a lack of staffing, training, guidance, supervision, and clear and obvious deliberate indifference to this Plaintiff's life.

109.    That Ms. Brand and/or Sgt. Russell at some point tried to reach a local police officer to bring in some Narcan believing it would relieve the symptoms of this Plaintiff.

110.    That a police officer showed up at the jail with Narcan.

111.    That someone figured out at some point that Narcan does not help with a possible Meth overdose however 911 was still not called.

112.    That all these Defendants violated official jail policy and procedure and Southern Health Partner's policy and procedures when they failed to properly assess the Plaintiff and call for 911 on numerous conditions or simply load up the Plaintiff and take him to the nearest hospital some eight minutes away, as well as, violated the Plaintiff's constitutional rights under the Kentucky and United States Constitutions.

113.    Defendant Fiscal Court is required to maintain insurance to cover injuries caused by the

lack of medical treatment and/or gross negligence regarding prisoners by its deputy jailers at the Kenton County Detention Center pursuant to KRS 65.150.

114. Defendant Fiscal Court is required to maintain insurance for liability of the jailer or his deputies in their official capacities.

115. Defendant Southern Health Partners, Inc. is also required to maintain insurance for liability of their staff while working at the Kenton County Detention Center.

116. That the staff composed of Ms. Caitlin Brand and another unknown Jane Doe believed to be a nurse acted with clear gross negligence and deliberate indifference to the Plaintiff and his rapidly deteriorating condition.

117. That no rational or reasonable human being could observe what was observed by the jail staff and the medical staff and not come to the conclusion that the treatment provided to this Plaintiff was clearly gross negligence and deliberately indifferent to him.

118. That the Plaintiff will file a CD containing a video demonstrating the clear and obvious allegations regarding the Plaintiff which includes the obvious failure of these Defendants to get immediate emergency medical treatment for him.

## KENTON COUNTY DETENTION CENTER POLICIES AND PROCEDURES

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 87 as if fully recited herein and further states as follows:

119. Kenton County Detention Center Policies and Procedures, written and/or approved by the Fiscal Court and relevant to this situation are as follows:

**Policy 1.1.1          MANAGEMENT PHILOSOPHY**

**III.    PROCEDURAL GUIDELINES**

**A. Philosophy**

17

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

1. The Office of the Kenton County Jailer is established in accordance with applicable statutes and regulations defining the constitutional responsibilities of this elected official with a goal of ensuring the public safety by providing professionally managed detention services to confined offenders, pursuant to court judgments and orders.

## Policy 1.3.11    EMPLOYEE CODE OF CONDUCT

**Policy 1.3.11 B.1.**   Each employee's conduct should be guided by this policy, which is consistent with the Detention Center's policy and procedure, post orders. Command Memorandum, or like operating directive or adopted regulation.

**Policy 1.3.11 C.1.a**   Personnel are required to adhere to Detention Center policy and procedure, Kenton County Personnel regulations and County Ordinances, State Statues (sic) and all other laws applicable to the general public.

**Policy 1.3.11 E.2.**   Brutality in the treatment of the inmates is not tolerated and is cause for dismissal and possible criminal charges

## Policy 3.1.31    BASIC PATROLLING

## I. ALL SECURITY STAFF

**A.**   Deputies are to patrol their assigned area, observing the inmates throughout their shift. periodic checks are to be made in the areas, to include prisoner living areas. The assigned Deputy will report any problems or concerns to their respective Shift Commander immediately; this includes any suspicious inmate behavior or occurrences.

**B.**   Deputies are to make rounds in an irregular manner to prevent establishing a patter, but ensure each inmate observed at least every (30) minutes (unless instructed otherwise). Ensure that all was tours (via Master Control) are conducted.

## Policy 3.1.37    INMATE DRUG AND ALCOHOL USE DETECTION

**Policy 3.1.37 A.1**   If any Detention Deputy has an articulable, justifiable suspicion that a general population, restricted custody, or protective custody inmate in their custody may be under the influence of a controlled substance, they will contact a supervisor and give that supervisor their bases for believing a drug test is necessary. If the supervisor acknowledges a reasonable suspicion exists, the drug screen can be authorized. The Jail supervisor will then contact the Administrative Duty Officer and obtain their authorization to conduct a drug screen, this approval may be obtained over the phone if necessary.

**Policy 3.1.37 A.3**   In order to control the inmate in question while a Deputy obtains authorization for a drug alcohol screen they will frisk search and maintain constant contact with the inmate, or secure the inmate in an available holding cell after having carefully frisk searched the individual.

**Policy 3.2.15**   **MEDICAL EMERGENCY PLAN**

**III.   PROCEDURAL GUIDELINES**

**B. Notification**   Any staff member encountering a medical emergency will without delay give the alarm to the assigned medical staff so that they may respond in the most expeditious manner possible. The Main Control Operator will be utilized for the purpose of alerting medical staff to the presence of a medical emergency. The Main Control Operator will relay the request for emergency medical services directly to a LPN or EMT informing them of the nature of the emergency, the location and any other vital data they may have. Institutional radio, public service, or intercom depending on which method is the most expeditious can convey this notification. The Main Control Operator will continue to assist medical staff by continuing to monitor both surveillance assets (if present) and all radio transmissions, acting on all requests coming from the scene of the emergency.

**D. Activation of the 911 Emergency Management System.**

1. The "911" system will be activated for the purpose of securing additional emergency medical assistance and transportation of the prisoner to an area hospital by available basic life support provider. The decision to activate the 911 Emergency Medical System will normally be made by the senior medical staff member treating an inmate at the scene, however nothing in this directive shall preclude any staff member from activating the 911 Emergency Medical System.

**Policy 3.4.6**   **LOG SYSTEMS IN SEGREGATION UNITS**

**Policy 3.4.6 II.**   It is the Policy of the Kenton County Detention Center to have in place a system of permanent logs and records that adequately document the activities, programs and visitation patterns of all prisoners assigned to a segregation status.

**III. PROCEDURAL GUIDELINES**

**A. Types of Logs**

1. Logs will be maintained on each post in the Detention Center to reflect the following information:

b.) General Unit Log (Pass Down Log Book): this log contained information of all commitments and discharge including the following:
- i. Prisoner's name and register number
- ii. Date and time of entry and release
- iii. Reasons for admission
- iv. Authorizing official
- v. All unusual incidents

c.) Individual Prisoner Log Sheets: this third record system may be maintained as necessary with an individual log sheet for a prisoner, containing the following:

- i. All special orders regarding critical medical, behavioral, or other information
- ii. A shit-by-shift record of meals, showers, recreation, medication, and other necessary actions. These log sheets will be filed in the prisoners' file on release from the unit as proof that essential services were provided.

2. Each log or record entry will be signed by the Detention Deputy making that entry. All releases from the unit will be recorded in the general unit log and on the individual log sheet, which will then be forwarded to the file.

## Policy 3.5.2          INMATE RIGHTS

### III.   INMATE RIGHTS

9. MEDICAL AND MENTAL HEALTH CARE: All inmates are entitled to the health care comparable to that available in the community. Those who have funds are expected to pay for those services.

## Policy 4.5.3          MEDICAL SERVICES

### III. Procedural Guidelines

A continuum of health care services will be available to prisoners while in custody. The Kenton County Fiscal Court will ensure the quality and availability of medical and mental health services and will be responsible for approving a written plan for delivering those services to all prisoners.

### D. Emergency Care

1. Emergency care will be available for acute illnesses or unexpected health care needs that cannot be deferred until the next scheduled sick call. This care will be provided through methods managed by the Detention Center's Medical Staff and by other Professional staff such as Certified Emergency Medical Technicians assigned to the Jail, health care staff local ambulance services, or outside hospital emergency rooms.

2. Emergency care will be expedited by the following procedures:

   a.) The use of radios, and intercoms to advise medical staff on the onset of an emergency
   b.) On-site first aid and crisis intervention
   c.) Procurement and maintenance of a contract for emergency evacuation capability
   d.) Emergency medical vehicle availability
   e.) Access to designated hospital emergency rooms or other appropriate health care facilities
   f.) Availability of on-call physician, and mental health professional services.
   g.) Security procedures appropriate to the prisoner's custody level, if he or she is removed to a local medical facility.

**I. Emergency Medical Services**

4. If the situation is life threatening, the Shift Commander will authorize (without awaiting the advice of medical staff) the notification of appropriate emergency resources (e.g., emergency medical services and hospitals).

5. In such a situation, staff will render applicable first aid while awaiting the arrival of medical staff or other emergency resources. All on-duty Medical First Responders will respond to the scene of an ongoing medical emergency. If adequate, staff are present and handling the situation the first responder will report back to their original post.

**Policy 4.5.14          MEDICAL SCREENING OF PRE-TRIAL PRIOSNERS**

**III.   PROCEDURAL GUIDELINES**

G.   Medical screening shall be performed by the receiving Deputy on all prisoners upon their admission to the Detention Center and before their placement in prisoner living areas. The findings of this medical screening shall be recorded on a printed screening form approved by the medical authority. The medical screening inquiry shall include but not be limited to:
1. Current illnesses and health problems
2. Medications taken and special health requirements.
3. Screening of other health problems designated by the medical authority
4. Behavioral observation, state of consciousness and mental status
5. Notation of body deformities, markings, bruising, lesions, jaundice, ease of movement, and other distinguishing characteristics.
6. Condition of skin and body orifices, including rashes and infestations.
7. Disposition and referral of prisoners to qualified medical personnel on an emergency basis.

K.   Emergency medical, dental, and psychiatric assistance shall be available to all prisoners commensurate with the level of such care available to the community.

120.   The Plaintiff lost his life as a direct and proximate result of the policy and procedures not being followed in the Kenton County Detention Center and Southern Health Partners, Inc.

121.   Deputies and nurses are trained to be and are aware of inmate statutory and constitutional rights as well as the fact of when to call 911 or seek emergency medical treatment which was clearly needed in this case in light of clearly established law.

122.   Deputies and nurses are required to read and be familiar with the contents of the Kenton County Detention Center Policy and Procedure Manual as well as the Policy and Procedure Manual of Southern Health Partners, Inc.

123.   Sgt. Russell's obvious and flagrant disregard of the Plaintiff's condition was deliberately indifferent to the Plaintiff's life and was in direct violation of the Policy and Procedure Manual, and unlawful in light of clearly established law and the information possessed at the time by Sgt. Russell.

124.   All of the Defendants' conduct as alleged in this Complaint violates clearly established statutory and constitutional rights known by all the deputy jailers at the Kenton County Detention Center.

125.   Deputies at the Kenton County Detention Center are peace officers having the power to arrest, search and seize, but they do not receive the Kentucky Department of Criminal Justice Training's 18-week basic police academy, which is mandatory for police officers in the Commonwealth.

126.   Deputies at the Kenton County Detention Center are peace officers having the power to arrest, search and seize, but they do not receive formal training from the Kentucky Department of Corrections in the use of medical treatment.

127.    Despite possessing the legal powers of police officers, and because the deputy jailers at the Kenton County Detention Center are not required to take any formal medical training other than basic CPR courses, they are not adequately trained in the use of medical situations, despite their awareness of inmate statutory and constitutional rights as well as the fact that the denial of medical resources while in jail is unlawful in light of clearly established law.

128.    Failure to train the Kenton County Deputies in the proper use of medical treatment and analysis is the fault of both the Kenton County Fiscal Court and the Defendant Jailer Terry Carl and constitutes an official policy and custom by the Kenton County Fiscal Court and Jailer Terry Carl.

## CAUSES OF ACTION

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 128 as if fully recited herein and further states as follows:

129.    Plaintiff is accorded certain rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and the Kentucky Constitution and federal and state statutory laws that are enforceable under 42 USC § 1983.

130.    Plaintiff is accorded the right under the United States Constitution and ancillary and parallel provisions of the Constitution of the Commonwealth of Kentucky, to be free from cruel and unusual punishment, to be free from obvious physical and mental abuse by deputies and/or jail staff and a right to be free from the deliberate indifference of the jailer and the deputies to his safety and welfare while he is a prisoner under the custody, care and control of the Kenton County Detention Center.

131.    Plaintiff as an inmate at the Kenton County Detention Center is entitled to immediate and proper medical attention.

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

## COUNT I

## VIOLATION OF RIGHTS ACCORDED BY THE
## FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## AND ANCILLARY AND PARALLEL PROVISIONS IN THE KENTUCKY
## CONSTITUTION

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 131 as if fully recited herein and further states as follows:

132.    On July 19, 2019, the Plaintiff was entitled to be treated to in a humane and appropriate fashion taking into consideration his condition at the time of entry into the Kenton County Detention Center.

133.    Although it was obvious that the Plaintiff, who was sweating profusely, incoherent, and unresponsive, was overdosing and in need of immediate medical care, not one jail employee or nurse sought immediate emergency medical care for the Plaintiff.

134.    In failing to immediately call 911 or transport the Plaintiff to the hospital when it was obvious that he needed emergency medical attention, the Defendants acted in bad faith, without provocation, with deliberate indifference to the rights of the Plaintiff, and with no valid reason under the policies and procedures of the Kenton County Detention Center or established case law to act the way they did in this matter.

135.    Failing to drive the Plaintiff to the hospital or immediately calling 911 when it was obvious to a reasonable lay person that the Plaintiff was suffering from a meth overdose is a violation of his right to have emergency medical care while under the custody, care and control of the Commonwealth of Kentucky and the Kenton County Detention Center.

136.    The Defendants' conduct as alleged in this Complaint violates clearly established statutory and constitutional rights known by all of these Defendants.

137.    As a direct and proximate result of the Defendants' actions, Plaintiff died within the jail although he was revived only to officially die three to four days later on July 22, 2019.

## COUNT II

## LACK OF TRAINING

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 37 as if fully recited herein and further states as follows:

138.    The Kenton County Detention Center and Southern Health Partners, Inc., has an elaborate and instructive Policy and Procedures Manual defining, *inter alia* the proper and appropriate use of medical care among other things at the Detention Center.

139.    As part of their employment, Kenton County Deputies and employees of Southern Health Partners, Inc., are required to read, understand and be familiar with the contents of their Manuals and specifically the guidelines on the use of medical care and treatment.

140.    Kenton County Deputies are not properly trained in the detection and treatment of inmates with medical needs.  They do not undergo formal  law enforcement training in the appropriate use of medical care, despite their possession of significant law enforcement powers and despite being required to the know when to identify a situation that requires immediate medical attention as mandated in the Policy and Procedures Manual.

141.    Neither Defendant the Fiscal Court nor the Defendant Jailer Terry Carl take any action to ensure that the deputies employed at the Kenton County Detention Center have formal or adequate training in the area detection and treatment of inmates with obvious medical needs to comply with the law or the policy and procedures manual and this inaction constitutes a custom and official policy by Kenton County Fiscal Court and Jailer Terry Carl.

142. Deputies at the Kenton County Detention Center do not have training from the Kentucky Department of Corrections or any formal law enforcement training.

143. The nurses employed by the Defendant, Southern Health Partners, Inc., to work at the Kenton County Detention Center on July 19, 2019 were also not properly trained and did not follow their respective policy and procedures manual.

144. As a direct and proximate result of not receiving immediate medical care and treatment from all of these Defendants the Plaintiff lost his life after suffering extreme trauma, anguish, and pain all to his detriment.

## COUNT III

## NEGLIGENCE UNDER STATE LAW

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 144 as if fully recited herein and further states as follows:

145. The Fiscal Court, Jailer Carl, the Kenton County Detention Center together with the deputies employed there, in addition to, Southern Health Partners, Inc., and its employees were all under a duty to protect the safety and welfare of the prisoners under their custody and control.

146. Defendants Fiscal Court of Kenton County and Jailer Carl along with Southern Health Partners, Inc. all violated this duty by failing to require proper training for any Deputy or nurse who interacts with inmates to have adequate training in the detection and use of proper and immediate medical care when an inmate clearly demonstrates a substantial risk of serious harm and disregards same by failing to take reasonable measures to abate it.

147. Defendants Fiscal Court of Kenton County and Jailer Carl along with Southern Health Partners, Inc., clearly violated these duties by continuing to allow, condone and even encourage the denial of obvious medical treatment at the Kenton County Detention Center.

148. The denial of medical care is a regular occurrence at the Detention Center and constitutes an official policy and custom condoned by the Defendants.

149. The Defendants violated this duty when they did not send the Plaintiff to the hospital upon observing the obvious condition of the Plaintiff from the time he entered the facility to the time he eventually left.

150. All the deputies and nurses referenced herein negligently failed to follow the policies and procedures of the Kenton County Detention Center and the policies and procedures of Southern Health Partners, Inc., with respect to the appropriate use of medical care in this case.

151. The Fiscal Court and Jailer Carl and Southern Health Partners, Inc., violated this duty by failing to properly train deputy jailers and/or nurses in the appropriate detection and use of proper medical care.

152. As a direct and proximate result of not receiving immediate medical care and treatment from all of these Defendants the Plaintiff lost his life after suffering extreme trauma, anguish, and pain all to his detriment.

## COUNT IV

### FAILURE TO RENDER IMMEDIATE EMERGENCY MEDICAL ASSISTANCE

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 152 as if fully recited herein and further states as follows:

153. The Fiscal Court of Kenton County has duty to provide for the safety of inmates at the Kenton County Detention Center under KRS 441.045

154. Defendant Jailer Carl is under to a duty to provide for the safety, care, and treatment of inmates at the Kenton County Detention Center while they are under his custody pursuant to KRS 70.040.

27

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

155. Southern Health Partners, Inc., has a contractual duty to provide for the safety, care, and treatment of inmates at the Kenton County Detention Center while they are under their custody pursuant to the Kentucky Revised Codes.

156. The Kenton County Detention Center Policy and Procedure Manual along with the Southern Health Care Policy and Procedure Manual both require that an inmate be provided immediate emergency medical treatment when necessary.

157. The Defendants failed to provide immediate medical treatment to the Plaintiff clearly observing the Plaintiff's condition as he entered the facility which cost the Plaintiff his life.

158. As a direct and proximate result of being denied critical and immediate medical treatment the Plaintiff suffered severe and traumatic injuries and damages which eventually took his life as previously referenced herein.

## COUNT V

## INFLICTION OF EMOTIONAL DISTRESS

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 158 as if fully recited herein and further states as follows:

159. Plaintiff has a right guaranteed under the Fourth Amendment to the United States Constitution as well as the parallel and ancillary provisions in the Kentucky Constitution, to be free from cruel and unusual punishment, to have access to immediate and necessary medical care and a right to be free from the deliberate indifference of the jailer and the deputies to his safety and welfare, in addition to the employees of Southern Health Partners, Inc., while he is a prisoner under the care and control of the Defendant Jailer Carl and the Kenton County Detention Center.

160. Each of these rights was violated by the actions of the Defendants as recounted in this Complaint with the result that Plaintiff suffered severe emotional anguish, trauma, and distress

prior to this death.

161.    The actions of the Defendants as recounted in this Complaint represent a course of conduct that offends against ordinary and decent standards of care.

162.    The actions of the Defendants as recounted in this Complaint were extreme, outrageous, and intolerable in a civilized society.

163.    As a direct proximate and foreseeable result of the intentional and negligent actions of the Defendants, both in their official and individual capacities the Plaintiff wrongfully died. In addition, the Plaintiff suffered extreme damages leading up to the point where he lost his life, which include but are not limited to the following: incurring of vast medical expenses, extreme mental anguish and distress, incurring of funeral and burial expenses, permanent scarring and emotional and trauma, etc.

## COUNT VI

### MUNICIPAL LIABILITY OF THE KENTON COUNTY FISCAL COURT AS THE COMMONWEALTH-MANDATED OPERATOR OF THE KENTON COUNTY DETENTION CENTER

164.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 163 as if fully recited herein and further states as follows:

165.    The Kenton County Detention Center has a well-documented history of constitutional violations by its deputy jailers and /or medical staff.

166.    Kenton County and the Kenton County Fiscal Court have actual and constructive knowledge of the well-documented use of constitutional violations at the Kenton County Detention Center.

167.    Plaintiff believes and therefore alleges that there is a culture at the Kenton County Detention Center that allows and condones constitutional violations regarding its inmates with

29

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

little to minimal repercussions.

168. Plaintiff believes and therefore alleges that deputy jailers and nurses who engage in the aforementioned constitutional violations are not subject to adequate penalties and are not adequately trained or supervised.

169. The Kenton County Detention Center under 501 KAR 3:020, §1 is required to develop and maintain "a policy and procedures manual that has been adopted by the governing authority and filed with the department."

170. The Kenton County Fiscal Court under 501 KAR 3:010, §1(12) is the governing authority of the Kenton County Detention Center.

171. The Kenton County Fiscal Court is mandated by the Commonwealth through KRS Chapter 441, which governs both the operation of the county jail and the care of county and state prisoners, to control and manage the policies, procedures and operations of the Kenton County Detention Center, including the hiring, supervision and training of deputy jailers and others charged with the care and protection of the prisoners in the Kenton County Detention Center.

172. Consistent with KRS 441.055 the Kenton County Detention Center is subject to *inter alia* minimum standards for health and safety conditions at the jail, basic training and annual training for jailers and jail personnel, and the custody, care, and treatment of prisoners.

173. It is the responsibility of the Kenton County Fiscal Court pursuant to KRS 441.025 to provide and maintain the Kenton County Detention Center in compliance with the mandate of KRS 441.055 and to provide and maintain a safe, secure and clean jail in the county.

174. Consistent with KRS 441.045(1), the Kenton County Fiscal Court is mandated to "prescribe rules for the government, security, safety, and cleanliness of the jail and the comfort and treatment of prisoners" at the Kenton County Detention Center.

175. Consistent with KRS 441.04591), the Kenton county judge/executive may inspect the jail at any reasonable time.

176. KRS 441.045(2) provides that "[w]willful violation of the rules promulgated pursuant to KRS 441.045(1) shall be deemed a violation."

177. KRS 441.115(1) mandates "[f]or the purpose of raising the level of competence of jailers and jail personnel, the department shall maintain a jail staff training program to provide training for jailers and jail personnel consistent with the standards promulgated pursuant to KRS 441.055 and shall keep records of jailers and jail personnel who satisfactorily complete basic and annual continuing education."

178. Plaintiff believes and therefore alleges that the Kenton County Fiscal Court and its members are the policymakers for the operations and training for the Kenton County Detention Center.

179. The Kenton County Fiscal Court pursuant to KRS 441, governing the operation of the county jails and prisoners, is the commonwealth-mandated policymaker of the operations of the Kenton county Detention Center.

180. The Kenton County Fiscal Court approves the Kenton County Detention Center written policies, procedures, and controls funding of the jail operations. By controlling the funding of the jail and having final responsibility for the written policies and procedures, the Kenton County Fiscal Court is ultimately responsible for both the enforcement of policy and procedures as well as the care and protection of the prisoners in the Kenton County Detention Center.

181. Defendant Kenton County Fiscal Court is not entitled to immunity because the KRS puts the responsibility directly on the Fiscal Court to oversee the health and safety of the inmates at the Kenton County Detention Center. The Fiscal Court's custodial responsibility for the safety of

inmates at the detention center is not a discretionary duty. The Legislature mandates it.

182. The Kentucky Legislature intends that state and county prisoners be safely provided for while incarcerated under the sponsorship of the Kenton County Fiscal Court.

183. The Kenton County Fiscal Court failed and continues to fail in this mandated duty. The failure of the Kenton County Fiscal Court to follow this mandate and safeguard the constitutional rights of inmates in its care is an official policy and custom of the Fiscal Court.

184. Plaintiff believes and therefore alleges that the Kenton County Fiscal Court has a custom and policy of both ignoring and also acquiescing in the well-documented and frequent use of denying serious medical needs at the Kenton County Detention Center.

185. Plaintiff believes and therefore alleges that the Kenton County Fiscal Court has a custom and policy of failing to train and supervise jailers and deputies on the proper, reasonable and appropriate detection and treatment of inmates who have serious and obvious medical needs while at the Kenton County Detention Center.

186. The Kenton County Fiscal Court's awareness of the frequent and well-documented use of inmates who have not been identified and treated by the jail employees including the nurse hired in to assist them and other constitutional violations at the Kenton County Detention Center clearly puts the Fiscal Court on notice that training in the use of same is obviously lacking and likely to cause injuries and even lead to deaths.

187. Plaintiff believes and therefore alleges the Kenton County Fiscal Court has a pattern of inadequately investigating the use of constitutional violations at the Kenton County Detention Center.

188. The Kenton County Fiscal Court's pattern of inadequate investigation of the constitutional violations at the Kenton County Detention Center amounts to a custom and policy

32

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

and supports a *Monell*-style municipal liability claim against the Kenton County Fiscal Court.

189. The Kenton County Fiscal Court's pattern of failing to require that its jailers are adequately trained while at the Kenton County Detention Center amounts to a custom and policy and supports a *Monell*-style municipal liability claim against the Kenton County Fiscal Court.

190. Plaintiff believes and therefore alleges that the Kenton County Fiscal Court unlawfully cedes it policy making authority to the Kenton County Jailer resulting in a de facto policy and tacit approval of frequent constitutional violations at the Kenton County Detention Center.

191. Plaintiff believes and therefore alleges that the unlawful ceding of the policy making authority to the Kenton County Jailer amounts to a custom and policy of not providing proper supervision of the operations at the Kenton County Detention Center, and that the frequent use of constitutional violations at the Kenton County Detention Center is driven by this custom and policy.

192. Plaintiff suffered inhumanely and eventually lost his life as a result of Kenton County Fiscal Court's custom and policy of ignoring the constant constitutional violations that occur regularly at the Kenton County Detention Center.

193. Plaintiff suffered lasting damages as a result of Kenton County Fiscal Court's custom and policy of failing to require adequate training of its deputy jailers with the actual and constructive knowledge of the frequent constitutional violations at the Kenton County Detention Center.

194. Plaintiff suffered lasting damages as a result of Kenton County Fiscal Court's custom and policy of ceding its policy making authority to the Kenton County Jailer with the actual and constructive knowledge of the frequent acts regarding the denial of serious, necessary and critical medical treatment to inmates at the Kenton County Detention Center and the failure to require deputy jailers to receive adequate training.

195. Kenton County Fiscal Court's policy and custom of failing to ensure the adequate training in the proper use of medical detection and treatment at the Kenton County Detention Center is the moving force behind the frequent use on ongoing constitutional violations which take place at the Kenton County Detention Center on a regular basis and which amounts to deliberate indifference to the rights of the inmates at the Kenton County Detention Center.

## PUNITIVE DAMAGES

Plaintiff repeats, realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 195 as if fully recited herein and further states as follows:

196. Plaintiff has a right guaranteed under the Fourth Amendment to the United States Constitution as well as the parallel and ancillary provisions in the Kentucky Constitution, to be free from cruel and unusual punishment as well as to be able to receive qualified, humane and educated decisions through implementation of appropriate training programs while in the care, custody and control of the Kenton County Detention Center.

197. The Kenton County Detention Center through the Kenton County Fiscal Court, Jailer Carl and all of the named Deputies and/or Sergeants, in addition to, Southern Health Partners and its employees, Caitlyn Brand and an Unknown Employee known as Jane Doe, officially and in their individual capacities, violated the Plaintiff's Constitutional rights by the actions or lack of actions as alleged in this Complaint.

198. The actions as alleged in this Complaint are the type of conduct for which punitive damages are assessed to prohibit the same conduct in the future.

199. The actions as alleged in this Complaint clearly rise to the level of deliberate indifference, intentional and reckless conduct, gross negligence and constitute a reckless and wanton disregard for the value of human life, the physical safety of the prisoners under their control and care, and

the dignity and well-being of the prisoners under their control making each Defendant liable for punitive damages under Kentucky Common Law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons given in this Complaint, Plaintiff demands:

a) Trial by jury on all matters, including a jury instruction on awarding punitive damages;

b) To be compensated for his medical bills as well as the physical and mental damages, lost wages, etc., suffered as a result of the unlawful and unconstitutional treatment while in the Kenton County Detention Center which ultimately lead to his death and;

c)  To be awarded his funeral and burial expenses and;

c) An award of attorney's fees and expenses of the case;

d) And for all other relief, both equitable and otherwise, as the Court may deem reasonable and necessary.

Respectfully submitted by:

/s/Don Nageleisen

_____

Donald L. Nageleisen (829050)
2216 Dixie Highway #203
Ft. Mitchell, KY 41017
859-491-8887
dlnlegalmail@yahoo.com

Estate of Bradley Grote vs. Kenton County Detention Center, *et al.*
United States District Court, Eastern Division at Covington, KY

## **VERIFICATION**

Comes now the undersigned individual, Luanna Grote, hereby states that she has read the foregoing Document and that the facts contained therein are true and correct to the best of her knowledge and belief.

_____
Luanna Grote

Subscribed and sworn to before me by Luanna Grote on this the 16th day of July, 2020.

_____
Notary Public
My Commission Expires: _May 2024_